Barzelis v. Flagstar Bank, F.S.B., Mr. Peacock. Thank you, Your Honor. May it please the Court, Counsel. My name is Jack Peacock, and I represent Mrs. Barzelis as individually and as representative of the estate of Nicholas Barzelis, deceased. Mrs. Barzelis was the plaintiff in the trial court, and most of the case, however, was dismissed on a 12b-6 motion. As kind of a preliminary matter, there were a number of theories of recovery that we have waived during the course of the litigation. Just to go through those briefly, we've waived the tort of unreasonable collection efforts, the Deceptive Trade Practices Act, the Texas constitutional issues, and the suit to quiet title and trespass to try title. So the remaining theories of recovery are breach of contract, anticipatory breach of contract, RESPA, negligent misrepresentation, and the Texas Debt Collection Act. Those are the remaining theories of recovery, and all of those except RESPA were dismissed by the court on the 12b-6 motion. RESPA was dismissed on summary judgment. Who owns the home now? Mrs. Barzelis. She inherited it? No other children? There's no other children. Just the children of she and her husband. Why didn't she make that clear from the beginning? I'm always asking why we're here. He died in 2009. They knew there was a problem. They returned the checks when he was 12, and here we are in 2015, arguing preemption under the saving loan law. Why didn't it make... I know that the bank was hiding. What's the status of the loans now? Have they been paid? Are they escrowed or what? They're still pending. They will not accept any payments from Mrs. Barzelis. Nothing's been paid? Correct. As the court knows from the briefing, she's made every effort she knows to do to pay it to get the lender to accept the payments. Nothing's been done on that story since 2012. As a matter of fact, there has been, even though she contended, and we believe she's right, that there was no need to administer the estate. Since she was going to be the sole heir, however, after all of this blew up, we have filed a probate because, for this reason of this case, so the matter is now in probate court in Tarrant County. I just can't understand how a bank, no matter how busy they are, and a lady like this, have not settled this a long time ago. I just cannot conceive of any justification arguing preemption of all questions. But I've said my say. I'm going to listen. I'll listen. Thank you, Your Honor. I agree the matter should have resolved a long time ago, but it takes two to accomplish that. It appears the court is well-versed on the facts, so I'll just hit the high points a little bit, and then I'll jump into what I believe are the compelling issues. Interestingly, I guess because, Your Honor, you brought this up, I'll go a little deeper even beyond what's in the record. As a matter of fact, Mrs. Barcellas owned this property as her separate property, and in the course of making the home equity loan, I don't know all the reasons why she decided to convey the property to her husband, but she did. And so originally, the property was hers before it was ever his.  In 2007, she and her husband made a home equity loan on their home. He signed the note. She didn't sign the note, but they both signed the deed of trust as borrowers. At least that's how the deed of trust defines them, as borrowers. Well, in 08, as the court knows, he became ill. He was hospitalized. They had a ton of medical bills, and so they got behind on their mortgage. In 09, they worked out a forbearance plan. They successfully completed it, but then he died in October of 2009. Mr. Peacock, your time is almost half over, and you haven't gotten to any of the points that we'd like for you to argue as the appellant. And blame that on me. So give him a little more extra time, would you? Thank you, Your Honor. So in May of 2010, because of his death and all the medical bills, she filed for bankruptcy relief. She made all of her payments to the bankruptcy trustee, and the trustee tried to make payments to Flagstar, but Flagstar would not accept any payments. And I might note that in the deed of trust and the note, neither document gives the lender the right to refuse payments just because they're being made to somebody that's not named in the note. Now, moving on then to the... Did you mean to say somebody being made by somebody who's not in the note? I'm sorry. I said it wrong. I apologize. Right. The deed of trust and the note do not give the lender the authority to refuse payments even if they're coming from someone other than the person named in the note. So I think it's important for us to go to the main issues, and I want to start with the transcript because it's going to be key to this whole matter. And in particular, starting in Volume 4,  and I'm going to the one in Volume 4. It's in various places in the transcript, but it's more readable in Volume 4. Now, starting on page 767 of the transcript is the first page of the Texas Home Equity Security Instrument. And if you look on the front page where it has definitions, subsection B, borrower is defined as Nicholas Barcellas and Stacy K. Barcellas, husband and wife. So she's named as a borrower. Now, going to the next item, I want to... I'm doing a little bit of groundwork here. It's page 769. It defines RESPA, and this is going to be the only place that I believe you're going to see RESPA anywhere, and that's in the deed of trust where the borrower is defined. RESPA, of course, means the Real Estate Settlement and Procedures Act, and as used in this security instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a federally-related mortgage loan even if the extension of credit does not qualify as a federally-related mortgage loan under RESPA. All right. Continuing, going to the next page, which is page 770, borrower covenants, it's the top paragraph, borrower covenants that borrower, and that's both of them, that borrower is lawfully seized of the estate, hereby conveyed and has the right to grant and convey the property, and the property is unencumbered except for encumbrance of record. Borrower warrants and will defend generally the title to the property against all claims and demands subject to any encumbrances of record. Then it says borrower and lender covenant and agree as follows. Item 1, regarding payment of principal, interest, escrow items, and late charges, borrower, that includes both of them, shall pay when due the principal of and interest on the debt evidenced by the note and any late charges due under the note. Borrower shall also pay funds for escrow items pursuant to Section 3. Now I want to flip over to... All right, now we're getting to the meat of the breach of contract theory of recovery, and that's paragraph 21. And in our pleadings, in our amended complaint, we allege that there is a breach of the contract by Flagstar. Now, one basis for the breach of contract is paragraph 21, where it says acceleration remedies, and then it says lender shall give notice to borrower prior to acceleration following borrower's breach of any covenant or agreement in this security agreement, but not prior to acceleration under Section 17 unless applicable law provides otherwise. Section 17 is a due-on-sale clause, by the way. All right, the next sentence says the notice shall specify... Now, here's what's important, and this is what we alleged in our complaint. The notice shall specify the default, the action required to cure the default, a date not less than 30 days from the date the notice is given to borrower by which the default must be cured, and that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this security agreement and sale of the property. The notice shall further inform borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or other defensive bar to acceleration and sale. All right, that is one basis for the breach of contract. They didn't do that. Now, we alleged in our complaint that also Property Code Section 51.002D makes the same requirement. Since they didn't do it, they breached both the deed of trust on its face and the Texas Property Code, and since the deed of trust incorporates applicable law, that constituted a breach of the contract also. But that part of the Texas Property Code is preempted, isn't it, because the federal laws cover requirements of notice before... Well, and I don't disagree with that, but where the problem is is that we had two bases for breach of contract, and the court threw out our entire breach of contract claim based on what the court just said because of the Texas Property Code section. But our contention is here today that, well... Breach of contract. State law on breach of contract is not preempted, as I understand it. Is that right? That's correct, Your Honor. What about abusive collection tactics? That's not preempted either, according to the more recent cases. For example, the cases we cited in our... Did you cite a case on that? We did, Your Honor. Really, there's three of them. The Occoquan loan servicing case... Fifth Circuit cases? That's the Seventh Circuit. All right. There are no Fifth Circuit cases on this point. But there are Circuit cases? Yes. The Occoquan case, the Seventh Circuit case, the McCauley case, 2013. It's McCauley v. Home Loan Investment Bank. All right. That's fine. You can have two more minutes if there are other points that you want to cover in your opening. You still have time for rebuttal. Thank you, Your Honor, very much. So, the bottom line is that regarding any claims that are germane to the contract between the parties, those are not preempted under all these cases, and the OTS opinion letter. Also, they're not preempted if the claim involves deception or misrepresentation, which is right on point with our Texas Debt Collection Act claims. So, those are not preempted. So, our point is that laws that involve only breach of contract between the parties or deception or misrepresentation are not preempted under all these cases. So, we believe that the Court erred in dismissing those claims, and we ask the Court to reverse and remand. All right. Thank you. You've saved time for rebuttal. Mr. Peacock? Thank you, Your Honor. Ms. Castaneda? Thank you, Your Honor. May it please the Court. The reason that the entire breach of contract claim in this case was held to be preempted by HOLA, there are two of them. First of all, the way that the breach of contract was pleaded does actually bring it within the ambit of HOLA preemption. But in addition to that, an even more threshold reason is that Ms. Barcelles' response to the motion to dismiss did not contain any of these arguments or explanations or authority to avoid the presumption of preemption that arose under HOLA. I would submit to the Court that although this circuit has not yet addressed HOLA preemption and the method of applying it, its scope, this is not the case in which the Court should or needs to do so. Because if you look at the record that Ms. Barcelles created below, it is clear that the presumption of preemption under HOLA did arise because each of her claims affects lending, and Ms. Barcelles did not provide the district court or this court in the record as it existed at the time of the ruling any explanation or authority or other rationale for rebutting that presumption. And even though the Court is... Are you saying that anything under the Texas Debt Collection Act is preempted for a home mortgage? I'm saying that anything under the Texas Debt Collection Act that is asserted with regard to a home loan, with regard to a federal savings and loan, affects lending, and therefore, at a minimum, a presumption of preemption under HOLA arises. And at that point, it is up to the claimant to come in and explain to the Court why that presumption is rebutted. Now, I'm not suggesting that they have to do so with factual evidence, but I am certain that they need to provide grounds on which the Court could conclude that that presumption should be rebutted. Anything having to do with a home loan? Well, with regard to... At whatever point in the life of the loan? With regard to... I would say anything with regard to the extension of credit, unless the plaintiff comes in and establishes that... Well, let me back up, actually. Anything... At the point that I'm talking about where the presumption arises, it would be up to the party asserting preemption to establish that the claim falls within the presumption of preemption. In order to do that, all that party has to do is show that the claim affects lending. That's it. And it is difficult for me to imagine... That's a little bit different than arguing that anything having to do with a home loan... Any claim... I thought that's what you said initially. I'm sorry, Your Honor. I want to be clear. What I'm saying is any claim that's based on a state law that affects lending, the presumption of preemption would arise. If it's not conclusively preempted under 560.2b, it would be presumptively preempted under 560.2c if it affects lending. But debt collection practices are separate from the process of forming the contract and what the various instruments might say as required by federal law. It's true that a debt collection practices act on its face. Just in general, if we were sitting here talking in generalities, it might not always be presumptively preempted. But if the person establishing preemption has shown that the claim is based on alleged state law violations that affect lending, it would be presumptively preempted, and we have that situation here. This case differs on the TDCA in a very important way from many of the cases that both parties have been forced to rely on because they are the cases that are out there. Most of the other cases that have addressed preemption of unfair collection or really more like deceptive trade practices type things have dealt with general statutory prohibitions on deceptive practices, such as the Indiana Deceptive Acts and Practices Statute, the Florida Deceptive and Unfair Trade Practices Act, and California's UCL unfair competition law claims. And one of the rationales for saying that those types of claims generally are not preempted, not that they're never preempted, but generally are not, is that those types of statutes are applicable to all businesses engaged in commerce throughout the state, not just lenders. It's not just targeted at lending activities. It's not just targeted at collection of debt, what charges may be imposed in collecting a debt, what notices and disclosures are required to provide in the process of collecting a debt, but those other statutes are aimed generally at all business in the state. And that has been a major rationale of why courts have generally found that claims under those statutes are not preempted by HOLA. Here in this case, we have a very different situation. Both the statute and the allegations at issue are directed at lending and extensions of credit. The Texas Debt Collection Practices Act is aimed at what may and may not be done and what notices and fees may be charged and sent in the process of collecting a debt owed that's been extended by credit. It definitely affects lending. And so it differs in that initial way from these general statutes, but then also the way that a claimant uses the TDCPA claim can further bring it within the ambit of preemption. For example, in this case, Ms. Barzelas is not alleging that Flagstar made misrepresentations about a loan modification, for example, or about what might be done in terms of resolving the issues that her husband's passing away. If she says the bank refused to accept payments from her, that's her claim? That's correct. That's her claim. Why didn't the bank refuse to take the payments? Because by the time that Mr. Barzelas passed away, the note was already in default, Your Honor. It was not a situation where everything was current and he passed away, and then they refused to accept checks from somebody else. That's not it at all. There was a default and past due amounts owed, and it had gotten to the point where the lender was not going to accept these late payments that were only partial payments of what was actually past due. So she never offered to make it current, the loan? Not to my knowledge, and certainly not on the record. So her TDCPA allegations are that Flagstar misrepresented the amounts owed, that they wrongfully accelerated the loan, and that they imposed wrongful charges on the account. And these allegations are exactly the kind of thing that are in the laundry list of what is conclusively preempted under HOLA. Requirements regarding the circumstances under which a loan may be called due and payable, and requirements regarding fees, loan-related fees. Even if this did not mean that the TDCPA claim was conclusively preempted, which we submit it does, we argue that it is presumptively preempted. Certainly, with these types of allegations, one cannot say that this claim does not affect lending. She's arguing that Flagstar should have acted differently in representing amounts owed under the loan, in accelerating the loan, and in imposing charges related to the loan on the mortgage account. And all of these affect lending. If we look to see what Ms. Barzelas said in her response to the motion to dismiss, she had a very conclusory statement. She said the claims for violation of unreasonable collection efforts and Texas Debt Collection Act are excluded from preemption by 12 CFR 560.2, C-4, and 6's provisions, excluding tort law and other state laws. And that's what she said. And that does not explain why. On what basis is it excluded? Why does this claim meet the narrow exception in Subsection C that exempts from preemption a claim if the state law only incidentally affects lending or is otherwise consistent with the purposes enumerated in Subsection A, where Subsection A essentially says the purpose of this preemption is to allow federal savings and loans to extend credit where it's allowed under federal authority without regard to state law requirements. And the district court basically, when faced with no explanation and an explanation of why this did fall under the preemption provisions, said this falls under the preemption provisions and it's preempted. And belatedly, on reconsideration and further on appeal, Ms. Barzelas has developed her arguments about why this should not be presumptively preempted. But those arguments and explanations and support were not present when the district court was making its decision, and they should not be part of this court's review. Address Mr. Peacock referred to paragraph 21 of the complaint in terms of a pure state breach of contract claim. Well, with regard to the breach of contract claim, the statement in paragraph 21, I think, is illuminating... In 21, that actually has to do with the RESPA claim. So that has to do with the allegation that a breach of RESPA would also be a breach of the contract. All right, well, is there in the complaint, from your point of view, a separate, just pure state law breach of contract claim? Well, we would submit that to the extent that there is a, quote, state law contract claim, it is one that is dependent on the Texas property code, and that... That's what it seems to me, but, I mean, I still haven't found anything that would be a state breach of contract claim other than the reliance on property code 51002D. I don't think there is, and I don't think that... I certainly don't think that it was argued that way in the response to the motion to dismiss. I mean, in the complaint, it specifically says, paragraph 15 of the security instrument provides that the security instrument is subject to applicable law. Texas property code 51002D is applicable law. So a violation of section 51002D is also a breach of the security instrument. That, to me, is the crux of their breach of contract claim. And that is preempted under HOLA. Now, I completely understand, Judge Reedley, that, in general, a breach of contract claim would not be preempted. Just generally speaking, preemption across the board, whether we're talking about HOLA or the Airline Deregulation Act or a multitude of other preemption statutes, generally are not going to preempt a breach of contract claim. However, I come to you with one of the rare cases where it does, and I think I can walk you through that to explain at least our argument for it. With regard to this particular breach of contract claim, the Texas property code provision with regard to foreclosure has a special significance in the home equity lending arena. And that's where we are today. This is a home equity loan, as Mr. Peacock referenced earlier. It's unclear why Ms. Barzelas may have transferred her separate property to her husband for the purpose of getting a home equity loan. We have no way of knowing if that was, you know, on the level or a shell game. We don't know. It's not in the record. But it was done, and this is a home equity extension of credit. As the Court is aware, the Texas Constitution places serious limitations on the ability of anyone to extend home equity lines of credit, and one of them is that you can only extend such a loan without personal recourse. So in the Texas home equity area, foreclosure and collecting on the debt through the security is the only way that a lender is going to have to recover on the note if it goes into default, as this one did. So unlike some of the other situations where courts have dealt with breach of contract claims based on actions in foreclosure and based on things that were and were not done in foreclosure, I think Texas is distinguishable in that aspect. It's not accurate to say that foreclosure only incidentally affects lending, just generally, because it certainly is the main collection effort that most lenders have in the mortgage area. But certainly in Texas home equity lending, it is the only way to recover if the loan goes into default, and therefore it is a major inducement and motivation and not enticement, but it's a major comfort, I guess, for lack of a better word, for a home equity lender to know that it is going to be able to foreclose on the note and to be able to extend its line of credit without foreclosure requirements that are in addition to what's either actually in the party's agreement or something that is required by a federal regulation in terms of disclosures, in terms of notices, that sort of thing. Okay. So here we have a breach of contract claim that is expressly based on the Texas Property Code, and those foreclosure requirements are very specific to lending activities. They're aimed at regulating loans, and there have been a spate of cases in the Northern District of California that have held that breach of contract claims predicated on alleged violations of foreclosure procedures are preempted, but I would argue that those kinds of rationales are even stronger here, where, as I've mentioned, foreclosure is not just the main method for a lender to have security of its home equity extension of credit, but the only security on that. So we would definitely argue that in this case the breach of contract claim is preempted, certainly that the presumption has arisen that it is preempted and that Ms. Barzelas did not below provide any explanation about why it wasn't, but even beyond that, looking at the arguments on appeal, we feel confident that in our briefing we have established that it is indeed preempted. With regard to the negligent misrepresentation claim, I did want to note that the Chang case that was cited in the reply brief actually supports our position that in this particular case the negligent misrepresentation claim does fall within a whole of preemption. And the distinction in the Chang case I think is useful across the board because it's a distinction between general misrepresentations, general fraud protections, general claims of misstatements, on the one hand, and on the other hand, specific representations or allegations that information was not disclosed in a proper manner because disclosures about loans definitely fall within the ambit of whole of preemption. And so where you have a negligent misrepresentation claim that is expressly based on an alleged failure to disclose information properly, we would submit that's not just a general negligent misrepresentation claim or a general fraud claim that shouldn't be preempted. Instead, that is a specific negligent misrepresentation claim being used to try to regulate the kind of disclosures that a federal savings and loan is required to provide, and that's exactly what whole of preempts. If you look at most of the cases in the reply, Chao, Vietz, de Leon, they all involve general misrepresentations. And then if you look in this case, the allegation is that Flagstar did not accurately communicate the correct status of the loan and failed to use reasonable care in communicating that. Finally, with regard to RESPA, I just wanted to note that I think the reason that we're still here after all this time is not because the bank refused to disclose information in response to a letter, but because the bank upheld a borrower's right and that many borrowers want, which is that their private financial information not be disclosed to somebody just because they write a letter saying they want it and that they're entitled to get it. The bank asked Ms. Barzelas to provide proof of her authority, not proof that her husband had died, but proof of authority to represent his estate, and she failed to do so. And then she failed to do so in court, and the district court noted that several times. Had she done so, the outcome might have been different. So there was no will here, though, right? It's my understanding that there was no will, but I don't think that we have any evidence to support that he died in test date and that either he was childless, well, I don't think he was childless, or that all his children were also her children. If all those things were true, then she would automatically be the borrower, would she not? I don't think that she would be the borrower, Your Honor, and I don't think that they're contending that she's the borrower. If you look at their briefing, they argue that she was acting as the borrower's agent and they try to provide reasons for that. They do not argue here, and they did not argue below that she was actually the borrower. That's noted in the district court's opinion. But, Your Honor, if she had provided Flagstar, for example, in her second letter, if she had provided an affidavit, which is provided for in the Texas Probate Code, now the Estates Code, to show her authority, or if she had even provided documentation showing, like, an unsworn declaration... I think we get the point. Yes. I'm sorry, Your Honor. No, you're answering the question. That's not a problem. But then who or what would be the borrower upon his death, assuming no other heirs and no will? I think that the estate would succeed to his liability and his obligations under the note, and I think that there are probably procedures that could have been invoked by an authorized representative of his estate to assume the obligations under the note. In fact, I know that that is something that is done after a decedent passes away and the spouse, usually the wife, unfortunately, is not on the note. Agreements can be made to assume the debt. If there's a default, however, the arrearage has to be dealt with in some way, and that either has to be done by coming current, an offer to come current on the loan, as Judge Graves had mentioned, or some sort of agreement or modification. All right. Thank you, Ms. Castaneda. Thank you so much. Mr. Peacock, you've saved time for rebuttal. Do you make a specific breach of contract claim other than your claim that's funneled through the Texas Property Code? Yes, Your Honor, and let me show you that. I tagged it. In Volume 1 of the transcript, going to page 165, where it starts listing our causes of action, and it lists breach of contract, anticipatory breach of contract, and violations of the Real Estate Settlement Procedures Act, which is RESPA. If you go to paragraph 20, where it says defendants should have violated the Texas Property Code 51.002d and breached the security instrument. In particular, defendants have breached paragraphs or section 14, 15, 18, and 21 of the security instrument, period. Now, then we said in what particular the violation of paragraph 21 or section 21, which is the one I just read to the court when we started, defendants never gave plaintiff the notice of intent to accelerate or the right to cure and reinstate her note. That's the violation of section 21 of the contract. Now, regarding the fact that we also allege that there was a violation of property code 51.002d, if you continue to read on page 166, then we say paragraph 15 of the security instrument provides that the security instrument is subject to applicable law. Texas Property Code 51.002d is applicable law. So a violation of section 51.002d is also a breach of the security agreement. So our contention is, okay, if the court says, because there's a limitation regarding the property code, that that deed of trust claim is out, is preempted, still we have the remaining claim, the violation of section 21 of the deed of trust, which Mrs. Marcellus had signed. Well, that really wouldn't make any sense because then in any written contract you could put a sentence that says this contract is subject to all applicable state and federal law, and therefore you would be claiming to incorporate any violation of any state or federal law and you wouldn't have to plead them separately. I'm sorry, I can't buy that. Well, and I agree, Your Honor. The court has, since these pleadings, issued some opinions that said basically that, that if the contract says that applicable law applies and they violated some law out there, like they did in this case, 51.002, that that constitutes a breach of contract. Okay? Now, because the court has opined on that and has said that, this actually, that part would be out anyway. But our contention is that we still have the breach of contract under section 21 of the contract itself. There's no objection to having a contract that says the same as the statute says. And that's correct, and actually it does. Interestingly, the deed of trust contract goes further than the statute even did and makes additional requirements that the statute didn't make. But in any event, there's also another mention, if you go further in our pleading, where we say on page 168, in one sentence there, further, defendants have violated the Texas Property Code, section 51.002, and breached the security agreement, paragraphs 14, 15, 18, and 21. So, I see I'm running out of time. I would just say that it is in our pleadings, and it is on page 283 of volume 2 in our response to the motion to dismiss. We do have a response to that. It's on page, to the motion to dismiss, regarding breach of contract, TDCA, and all of that. It's in page 283. I would just want to say one more thing, and that is that since Judge Means issued his opinion in the Fort Worth Division of the Northern District, we've also cited the Henderson case, which is also one of my cases. Henderson versus Wells Fargo, where Judge Sam Lindsey disagrees with Judge Means' opinions regarding whether this kind of situation, the contract and the TDCA claims are preempted. He completely disagrees, and his opinion is based upon the OTS opinion letters and case law, and he says flat out that breach of contract based on the deed of trust and the TDCA claims are not preempted by HOLA. Is that case on appeal? It is not, Your Honor. As a matter of fact, it settled about a month ago, but before it settled, Judge Lindsey had issued this opinion, and it's cited in our brief and in our reply brief. All right. Thank you, Mr. Peacock. Your case is under submission. Thank you.